Willie C. GREEN and Virginia Green, Plaintiffs,

v.

MILLSBORO FIRE CO., INC., and Willis A. Smith, Jr., jointly and severally, Defendants.

Superior Court of Delaware, New Castle County.

Submitted Nov. 1, 1977.

Decided April 7, 1978.

Howard M. Handelman and Jeffrey M. Weiner of Bayard, Brill & Handelman, P. A., Wilmington, for plaintiffs.

F. Alton Tybout of Tybout & Redfearn, Wilmington, for defendants.

O'HARA, Judge.

This is a personal injury action arising out of a collision between a fire truck owned by the defendant, Millsboro Fire Company, and a pickup truck operated by the plaintiff, Willie C. Green. The accident occurred on July 3, 1974. At the time, the fire truck was being operated by the defendant, Willis A. Smith, Jr.

The defendants have interposed the affirmative defense of contributory negligence, and have moved for summary judgment on that basis. The plaintiff[1] has cross-filed for partial summary judgment on the issue of liability. He alleges that Smith, as the operator of the fire truck, was negligent, or alternatively that he was guilty of wanton misconduct. The plaintiff denies that he was contributorily negligent. Additionally, the plaintiff has moved to determine the sufficiency of the defendants' response to a request for an admission and seeks to have the request deemed admitted.

These being respective motions for summary judgment, the Court will weigh the facts in a light favoring the non-moving party. *Schagrin v. Wilmington Medical Center, Inc.,* Del.Super., 304 A.2d 61 (1973).

Before proceeding to the legal issues, it will be helpful to recite a summary of the facts which the Court concludes cannot be seriously disputed.

The accident in question occurred in the early morning at the intersection of U.S. Route 113 and Delaware Route 24. The road conditions were excellent, it being a bright summer's day. Green was traveling southbound on Route 113, a divided highway having two lanes for northbound and southbound traffic. Smith, who was responding to a fire alarm, was operating the Millsboro fire truck in a westerly direction, proceeding from a point east of Route 113. In order to traverse the intersection of Route 24 and Route 113 southbound, Smith first had to cross over the two northbound lanes of Route 113. He then had to pass through a paved median 75 to 100 feet wide, which divided the north and southbound lanes.

A traffic light controls the intersection of Route 24 and Route 113 northbound. When Smith approached that intersection the light was red. The evidence reveals that prior to reaching the intersection Smith had

---

1. Although there are two plaintiffs, Green and his wife, the wife's claim is derivative, so the Court will generally refer only to Green.

activated the fire truck's warning lights and siren. Smith passed through the red light and proceeded through the median area, heading toward the southbound lanes of 113. At all times, the fire truck maintained a speed of approximately 30 to 35 miles per hour. Route 24 is subject to a 25 miles per hour speed limit.

The intersection of Route 24 and Route 113 southbound is governed by a yield sign located at the end of the median strip. Smith has testified that after crossing the northbound lanes of 113, he began to look to his right for traffic proceeding in the southbound lanes. He claims not to have seen the Green vehicle which was advancing in the right-hand lane of 113 southbound, the lane farthest away from the fire truck. Smith disregarded the yield sign at the end of the median, and after he entered the southbound lanes, the two vehicles collided.

Prior to the accident, Green had been traveling south on Route 113 at a normal rate of speed. At a considerable distance from the intersection of Route 24, Green reduced his speed to about 40 miles per hour in response to an advisory speed limit sign and the upcoming traffic light. As the plaintiff neared the light, he saw that it was green in his favor. However, seeing that traffic was stopped in the eastbound lane of Route 24, he began to slow down even more. When the plaintiff reached a point about 100 feet from the intersection, he was traveling no more than 30 to 35 miles per hour, roughly the speed of the fire truck. Although Green claims to have glanced to his left before entering the intersection, he has testified that he never saw the oncoming fire truck. He also insists that he never heard the truck's siren, even though there were no distractions to retard his hearing.

Initially, the plaintiff has raised a number of issues regarding the interpretation of 21 Del.C. § 4106 and § 4134: (1) Whether the defendant's fire truck was an authorized emergency vehicle as defined in § 4106(e); (2) Whether the exemptions contained in § 4106(b) were available to the defendant; and (3) Whether the plaintiff was required to yield the right of way to the defendant's vehicle under § 4134.

■ Section 4106 details the privileges granted to the driver of an authorized emergency vehicle. Those privileges exempt the driver of such a vehicle from having to obey certain rules of the road listed in § 4106(b). Green has argued that § 4106(e) requires all emergency vehicles in Delaware to be authorized by the Secretary of Public Safety. Paragraph (e) provides:

"(e) Authorized emergency vehicles within the meaning of this chapter mean vehicles of a fire department, police vehicles, ambulances, and emergency vehicles of state, federal, county or municipal departments or public service corporations as are designated or authorized by the Commissioner."

The language of § 4106(e), however, is subject to differing interpretations. The statute can also be read to mean that all fire department, police vehicles and ambulances are *per se* authorized, and that only those vehicles not falling within one of the three enumerated categories require designation by the Secretary.

The suggested interpretation appears to be the correct one. Under an accepted rule of statutory construction, qualifying words and phrases refer solely to the last antecedent, unless a contrary intention appears. 2A Sutherland Statutory Construction, § 47.33 (4th ed. 1973). The grammar and punctuation of paragraph (e) do not indicate a contrary intention. Moreover, under the plaintiff's interpretation, § 4106(e) would contain verbiage. If all emergency vehicles required authorization, the references to police, fire vehicles and ambulances could be excluded without any loss in meaning. Another accepted rule of construction requires that every word and clause in a statute be given effect where possible. 2A Sutherland Statutory Construction, § 46.06 (4th ed. 1973). The Court's interpretation of § 4106(e) provides such meaning.

■ On reargument, Green has countered the above interpretation by offering

proof that the Millsboro Fire Company is a public service corporation, not a "fire department". Therefore, he argues, the truck could not be *per se* authorized. However, the term "fire department" certainly can be given a broader construction than plaintiff suggests. For example, there does not appear to be any logical reason to differentiate between fire trucks operated by a private corporation serving the public, and those operated by a governmental agency.

■ The plaintiff contends further that even if the Millsboro fire truck was an "authorized emergency vehicle", it was not entitled to exercise the privileges of § 4106(b) as the truck's visual and audible signals did not conform with § 4106(c). Paragraph (c) states that:

> "(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals meeting the requirements of this title, except that an authorized emergency vehicle operated as a police vehicle need not make use of such signals."

Similarly, the plaintiff argues that according to the terms of 21 Del.C. § 4134, he was not required to yield the right of way to the defendant's fire truck. That section limited the applicability of its provisions to those vehicles using audible and visual signals.[2]

There apparently are no legally established standards for the warning lights on emergency vehicles. As a consequence, it cannot be said that the fire truck's signals failed to meet the necessary standards.

■ As to a standard for audible signals, plaintiff cites 21 Del.C. § 4307. That statute requires fire department vehicles to carry a siren of a type approved by the Secretary of Public Safety. Since the defendant Millsboro Fire Company is a fire department, its sirens arguably must comply.

The Court, however, concludes that § 4307 does not set any standards for the

*audible* signals on emergency vehicles. Section 4307 speaks in terms of approved sirens, not audible signals. The statute has been in effect for some time and appears to have been enacted to deal with a problem regarding the various types of bells, sirens, and exhaust whistles being used on emergency vehicles. Therefore, a failure to obtain approval does not preclude an otherwise authorized emergency vehicle from exercising the privileges under § 4106 and § 4134. *Shawnee Tp. Fire Dist. No. 1 v. Morgan,* 221 Kan. 271, 559 P.2d 1141 (1977). Furthermore, failure to have the fire truck's siren approved is largely the result of an administrative omission and is in no way attributable to the defendants, nor does the failure of the defendants to have the siren approved appear to have been a proximate cause of the accident.

■ Left without statutory standards to guide it, the Court has concluded that the signals on the defendant's fire truck had to give a reasonable warning of the approach of the vehicle under the circumstances. If at least a "reasonable standard" were not required then any lights or sirens, no matter how ineffective, might be considered legally sufficient. The evidence in the record substantially establishes that the fire truck's signals met the reasonableness standard. Several eyewitnesses have testified to hearing the truck's siren at distances of at least several hundred feet. Although the fire truck's lights did not particularly draw anyone's attention to it in daylight, yet persons who actually saw the truck could tell that its warning lights were operating.

For the reasons stated the Court has determined that the Millsboro fire truck was an authorized emergency vehicle, and was entitled to the privileges set forth in § 4106 and § 4134.

■ Plaintiff, in support of his motion for summary judgment, argues that the defendant, Smith, was either reckless or

---

**2.** Section 4134 is presently worded in the disjunctive, i. e., audible *or* visual signals. However, at the time the accident in question occurred, the statute required both audible *and* visual signals.

negligent in his conduct. Sections 4106 and 4134 both require the operator of an emergency vehicle to drive with due regard for the safety of others.

The record leads to the inescapable conclusion that Smith's conduct was at least negligent. As he approached the intersection of Routes 24 and 113, he faced a red light. The danger posed to vehicles traveling at highway speeds on Route 113 was considerable. Nevertheless, Smith proceeded through the red light and the northbound lanes at a speed five to ten miles per hour over the posted limit. Although Smith was authorized to exceed the speed limit, he was restricted from doing so in a manner that would endanger life or property. 21 Del.C. § 4106(b)(3). According to his own statement, Smith did not look to his right to see if there was oncoming traffic in the southbound lanes of Route 113 until he had cleared the northbound lanes. At that time he would have been approximately 100 to 125 feet from the point of impact and had not even begun to check for traffic or slow his vehicle. The record further indicates that it would have taken at least 175 to 200 feet to bring the fire truck to a stop. Smith was entitled to rely to a degree that oncoming traffic would yield to his vehicle. However, he could not blindly enter an intersection. He was under a duty to keep a reasonable lookout under the circumstances. This he failed to do. Further evidence of negligence is the fact that even when Smith looked toward Route 113 southbound, he failed to see the plaintiff's truck, which was obviously in plain view. As a matter of law, it follows that the defendant, Smith, was negligent.

■ Whether these same facts indicate recklessness presents a more difficult question. Under 21 Del.C. § 4106 the defendant is not relieved of the consequences of reckless behavior. "Reckless disregard" is akin to "wanton disregard", as interpreted under the Delaware Automobile Guest Statute, 21 Del.C. § 6101. "Wanton disregard" means conduct reflecting a conscious indifference to the safety of others, or more simply, an "I-don't-care" attitude. *Foster v. Shrop-shire,* Del.Supr., 375 A.2d 458 (1977); *Creed v. Hartley,* Del.Super., 199 A.2d 113 (1962), aff'd, Del.Supr., 196 A.2d 224 (1963).

■ A recent decision of the Delaware Supreme Court, *Marshall v. Poore,* 382 A.2d 250, is pertinent to the issue of whether a jury question has been raised on the issue of the defendant's recklessness. In that case the lower Court had granted a summary judgment to the defendant-driver under the wanton disregard standard of the Guest Statute. *Marshall v. Poore,* C.A. No. 669, 1974, Letter Opinion, O'Hara, J., September 14, 1976. There the facts were that the vehicle in which the plaintiff was riding was traveling south on Route 13, a four-lane, divided highway; defendant-driver, Poore, pulled into a crossover intending to make a left turn and proceed north on Route 13. The driver claimed that he had waited and looked for oncoming traffic before pulling out onto Route 13 northbound, but that he did not see any vehicles approaching. Nevertheless, after he entered Route 13 his vehicle was promptly struck by another northbound vehicle. The record indicated that the driver's view of approaching traffic was unobstructed for 500 feet or more. The Superior Court decided, that as a matter of law, his conduct was not wanton. In reversing, the Supreme Court stated:

"Evidence in the record of this case that defendant failed to keep a proper lookout for on-coming traffic, . . ., would support the inference that defendant acted in wanton disregard of others; see *Wilson v. Tweed,* Del.Supr., 209 A.2d 899 (1965)."

For the same reason a jury might find here that the defendant, Smith, was reckless.

The defendants in support of their motion contend that the plaintiff was contributorily negligent and, therefore, his recovery is barred. The record reflects that plaintiff contends he neither saw nor heard the fire truck's signals and that this was demonstrably understandable. He contends that this view of the truck would have been obscured until the truck passed an Amoco Gas Station on the northeast corner of Routes 113

and 24. In addition, he points out that Route 24 intersects with 113 at an angle and that the sound of the truck's siren would have been directed an an angle facing away from his vehicle preventing him from hearing it.

However, a careful review of the record indicates that unquestionably Green should have seen the fire truck. The truck traveled a distance of at least 200 feet after passing the Amoco Station, during which time the plaintiff would have had a largely unimpeded view of the defendant's vehicle. At that point the truck's warning lights were flashing.

Additionally, the record establishes that the truck's siren was sounding prior to its entry into the intersection. Although none of the eyewitnesses were approaching from the same direction as the plaintiff, it seems unlikely that several other persons at comparable distances would have heard the siren, yet the plaintiff did not. Green's argument that the angle at which the truck approached made it difficult for him to hear the siren has some significance. However, by the time the fire engine had neared the intersection of Route 113 northbound, the angle could not have been very great. Yet, Green claims that he never heard the siren.

■■■ The driver of a motor vehicle is required to see and hear effectively. *Wootten v. Kiger,* Del.Supr., 226 A.2d 238 (1967). If Green never heard the siren, there is no reasonable explanation for his failure to see the fire truck, which was in plain view.

■■■ Plaintiff contends further that he, traveling on a through highway, was favored by a green light and that under the holding in *Williams v. Chittick,* Del.Supr., 139 A.2d 375 (1958), he was not obligated to reduce his speed until the danger posed by the oncoming vehicle became apparent. Upon scrutiny, the Court finds that *Williams* lends no support to the plaintiff. The intersection collision in that case involved two ordinary automobiles, and the favored driver could not anticipate that the less favored driver, whose vehicle he had seen, would fail to yield the right of way.

In the instant case, the allegedly less favored vehicle was a fire truck with flashing warning lights. If Green had observed the truck, he would have known that he was under a duty to yield.

The case *sub judice* contains marked similarities to *Bryerton v. Matthews,* Del.Super., 188 A.2d 228 (1963), aff'd, Del.Supr., 193 A.2d 83 (1963). There the Supreme Court affirmed a summary judgment in favor of the defendant ambulance driver. At issue was the contributory negligence of the driver of a passenger car involved in a collision with an ambulance. Application of the ruling in *Bryerton* would support the conclusion that the plaintiff here was negligent.

■■■ Green has argued that under 21 Del.C. § 4134(b), the driver of an authorized emergency vehicle is liable for ordinary negligence, regardless of the negligence of any other party. However, plaintiff misconstrues paragraph (b). That part of the statute does no more than confirm the duty of the driver of an emergency vehicle to exercise reasonable care, despite any privileges. There is no indication that § 4134(b) was intended to preclude the defense of contributory negligence as applied under general principles of tort law.

■■■ Defendants also contend that Green's failure to yield the right of way to the fire truck violated 21 Del.C. § 4134 and, therefore, constitutes negligence *per se.* Under the holding in *Nance v. Rees,* Del.Supr., 161 A.2d 795 (1960), that would appear to follow. Therefore, under both general negligence principles and under the doctrine of negligence *per se,* the defendants have established contributory negligence on the part of the plaintiff.

■■■ A finding of contributory negligence does not totally resolve the issue of liability. Contributory negligence will not bar a plaintiff's recovery if the defendant acted wantonly. *Gushen v. Penn Central Transportation Company,* Del.Supr., 280 A.2d 708 (1971). As was indicated above, a jury question exists as to the wantonness of the defendant.

Under the holding in *Marshall v. Poore*, supra, a jury question also exists as to the plaintiff's wantonness. It is clear that Green failed to keep a proper lookout. If a jury were to find that the plaintiff's conduct was wanton, such a finding would bar his recovery even though the defendant may also have acted wantonly. *Tabor v. O'Grady*, 61 N.J.Super. 446, 161 A.2d 267 (1960).

Finally, the plaintiff has raised the issue of last clear chance citing *Lord v. Poore*, Del.Supr., 108 A.2d 366 (1954) and *Baker v. Reid*, Del.Supr., 57 A.2d 103 (1947). Plaintiff maintains that had the defendant exercised ordinary care he could have realized the danger of collision and would have exercised the last clear chance to avoid the accident. However, the holding in *Lord v. Poore*, supra, establishes that last clear chance is not to be applied under certain circumstances unless the defendant is actually aware of the danger posed to the plaintiff:

> "[R]ecovery should be denied to a negligently inattentive plaintiff unless the evidence shows that defendant knew of plaintiff's situation and had reason to believe that he was inattentive and unlikely to discover his peril in time to avoid harm."

The present case involves a negligently inattentive plaintiff and a defendant who was unaware of the plaintiff's negligence. Accordingly, the last clear chance doctrine is inapplicable.

For the reasons herein set forth, the Court concludes that (1) Plaintiff's motion for summary judgment as to defendant's negligence should be granted; (2) Plaintiff's motion for summary judgment as to defendant's recklessness or wantonness should be denied; (3) Plaintiff's motion on his request for admission should be granted but without counsel fees awarded; and (4) Defendant's motion for summary judgment on issue of plaintiff's contributory negligence should be granted, as to ordinary negligence, but denied as to wanton negligence.

IT IS SO ORDERED.