475 S.E.2d 495

**Patti MILLER, Plaintiff Below, Appellant,**

v.

**CITY HOSPITAL, INC., Defendant Below, Appellee.**

No. 23089.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1996.

Decided July 17, 1996.

Carolyn Sue Daniel, Shepherdstown, for Appellant.

Lucien G. Lewin, Tracey B. Dawson, Steptoe & Johnson, Martinsburg, for Appellee.

PER CURIAM.

Patti Miller appeals a summary judgment order of the Circuit Court of Berkeley County dismissing her complaint against City Hospital, Inc., her former employer. The circuit court found that Ms. Miller's alleged injuries were covered under the West Virginia Workers' Compensation Act, W.Va.Code 23–1–1 (1995) *et seq.,* and that Ms. Miller failed to state a claim under the "deliberate intention" second exception of W.Va.Code 23–4–2(c)(2) (1994). On appeal, Ms. Miller contends that summary judgment is inappropriate because of the existence of disputed material facts that, if believed by a trier of fact, would show that her claim falls within the "deliberate intention" exception to the employer immunity provisions of the Compensation Act. Because the record shows Ms. Miller failed to establish any violation of statutory or safety standards, one of the five elements required under W.Va.Code 23–4–2(c) (1994), we affirm the decision of the circuit court.[1]

## I.

### FACTS AND BACKGROUND

Between July 6, 1992 and October 15, 1993, Ms. Miller was employed by City Hospital as a psychiatric/chemical dependency therapist in its mental health unit. Initially, Ms. Miller's employment status was occasional part-time, which is an "as needed" position receiving no benefits. On September 21, 1992, Ms. Miller applied for a status change from "occasional part-time" to "part-time," which is a regular part-time position with benefits and reduced pay to offset the award of benefits.[2] Ms. Miller contends that the hospital failed in its promise to employ her full time with benefits after a three-month probationary period.

---

1. Ms. Miller also asserts a defamation count that was dismissed on summary judgment. Because Ms. Miller failed to establish a nexus between the alleged defamation and the conduct of the hospital, we affirm the dismissal of the defamation count.

2. Ms. Miller sought clarification of the change in pay and was offered the option of returning to occasional part-time but she did not request returning to occasional part-time until November 1993.

Alleging that Tammy Davis, the nurse manager of the mental health unit in which Ms. Miller was working, engaged in "unjust continual harassment" toward her, Ms. Miller filed a grievance on November 23, 1992. On March 11, 1993 the Director of Human Resources sent Ms. Miller a letter stating that because she failed to request further action, he considered the working relationship improved and the matter resolved. Ms. Miller did not respond to the March 11, 1993 letter.

In her complaint, Ms. Miller alleges that the matter was not resolved because Ms. Davis verbally abused her, criticized her work, required her to perform the same work as required for a forty-hour week, and scheduled work hours so that she could not attend meetings designed to improve her work. Ms. Miller also alleges that she was denied personal leave for illness, forced to accept in-house healthcare, received threatening telephone calls and was threatened with physical harm. Ms. Miller notes that some substance, maybe grease, was placed at her work station and that her car was damaged in the parking lots. In addition, Ms. Miller notes that vicious rumors were circulated stating that she was having an affair with a co-worker who was in a supervisory position. Ms. Miller contends that even after she notified management of these problems, the hospital forced her to continue to work with the employees who were threatening her. Ms. Miller contends that because of the hospital's failure to act, which ratified the outrageous conduct, she had a severe emotional reaction and was forced to resign and to accept employment at a reduced wage rate.

On February 25, 1994, Ms. Miller filed her complaint alleging: first, the hospital through its employees had engaged in outrageous conduct thereby intentionally inflicted emotional distress on her; and second, the hospital had ratified the defamatory statements that were made about her by a hospital's employee thereby forcing her to change her employment. The hospital denied the allegations and after substantial discovery, the hospital filed a motion for summary judgment maintaining that Ms. Miller's claims were precluded by the Workers' Compensation Act and that the hospital was not legally responsible for the alleged defamatory remarks. Ms. Miller's response to the motion for summary judgment alleged that circumstantial evidence showed the hospital's intent, creating a question of material fact, which precluded summary judgment, and that the defamatory statements were imputable to the hospital. By order entered on October 14, 1994, the circuit court granted the hospital summary judgment finding that Ms. Miller failed to state a claim under the "deliberate intention" exception of the Workers' Compensation Act and that the alleged defamatory statements were not made under the actual or apparent authority of the hospital and were not defamatory per se.

Ms. Miller appealed to this Court alleging that summary judgment was inappropriate because genuine issues of material fact existed concerning whether her claim was barred by the employer's immunity provision of the Workers' Compensation Act and whether the statements were defamatory and made under the authority of the hospital.

## II.

### STANDARD OF REVIEW

The central issue of this case is the appropriateness of summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). *In accord Powderidge Unit Owners Association v. Highland Properties, Ltd.,* 196 W.Va. 692, 698, 474 S.E.2d 872, 878 (1996); *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 331, *rehearing denied* (1995). Our traditional standard for granting summary judgment is stated in Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963). "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *In accord* Syl. pt. 3, *Mallamo v. Town of Rivesville,* 197 W.Va. 616, 477 S.E.2d 525 (1996); Syl. pt. 1, *Williams v. Precision Coil, Inc., supra;* Syl. pt. 2, *Painter v. Peavy, supra;*

Syl. pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

■ Rule 56 (1978) of the *W.Va.R.Civ.P.* is " 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law." *Williams v. Precision Coil, Inc.,* 194 W.Va. at 58, 459 S.E.2d at 335, *quoting, Painter v. Peavy,* 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting, Oakes v. Monongahela Power Co.,* 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Subsection c of Rule 56 states, in pertinent part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ Syl. pt. 2 of *Williams v. Precision Coil, Inc.* states:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*In accord* Syl. pt. 4, *Mallamo v. Town of Rivesville, supra; see also* Syl. pt. 4, *Painter v. Peavy, supra.*

■ In considering a motion for summary judgment all facts and inferences "are viewed in the light most favorable to the nonmoving part" and the nonmoving party must offer some "some 'concrete evidence from which a reasonable ... [finder of fact] could return a verdict in ... [its] favor' or other 'significant probative evidence tending to support the complaint.' (Citations omitted.)" *Williams v. Precision Coil, Inc.,* 194 W.Va. at 60, 459 S.E.2d at 337, *quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986). Syl. pt. 3 of *Williams v. Precision Coil, Inc.,* states:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

With this standard in mind we review the circuit court's grant of summary judgment. In the case *sub judice,* the first issue is whether Ms. Miller's claim is barred by the employer immunity provided for employers participating in the Workers' Compensation Fund and the second issue concerns the alleged defamation.

## III.

## DISCUSSION

### A.

### *Employer Immunity*

■ Our workers' compensation system is supposed to benefit injured workers by providing benefits and full compensation through a basic "no-fault" system (*Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 700, 246 S.E.2d 907, 911 (1978)), *superseded by statute as recognized by, Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 475 S.E.2d 138 (1996)(hereinafter *Bell II* ) and to protect employers "from the financial consequences of civil liability to injured employees." *Mayles v. Shoney's, Inc.,* 185 W.Va. 88, 91, 405 S.E.2d 15, 18 (1990). W.Va.Code 23-4-2(c)(1) (1994) states, in pertinent part:

It is declared that enactment of this chapter and the establishment of the workers' compensation system in this chapter was and is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided, and to establish a system which compensates even

though the injury or death of an employee may be caused by his or her own fault or the fault of a co-employee; that the immunity established in sections six and six-a [§§ 23–2–6 and 23–2–6a], article two of this chapter, is an essential aspect of this workers' compensation system; that the intent of the Legislature in providing immunity from common law suit was and is to protect those so immunized from litigation outside the workers' compensation system except as herein expressly provided....

From its inception, our workers' compensation system has not granted immunity to employers when the injury results from an employer's deliberate intent. W.Va.Code 23–4–2(c)(2) (1994) states, in pertinent part:

> The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention".

*See Bell II, supra* (employer losses immunity when the employer acts with "deliberate intention" as specified in W.Va.Code 23–4–2).

■ In *Mayles v. Shoney's, Inc.,* 185 W.Va. at 92, 405 S.E.2d at 19, we recognized that the Workers' Compensation statute had been amended to create "a legislative standard for loss of employer immunity from civil liability for work-related injury to employees." Syl. pt. 1 of *Mayles v. Shoney's, Inc.,* states:

> The statute creating a legislative standard for loss of employer immunity from civil liability for work-related injury to employees found in W.Va.Code § 23–4–2 (1983) essentially sets forth two separate and distinct methods of proving "deliberate intention."

*In accord* Syl. pt. 1, *Sias v. W–P Coal Co.,* 185 W.Va. 569, 408 S.E.2d 321 (1991); Syl. pt. 1, *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. 633, 408 S.E.2d 385 (1991).

Although W.Va.Code 23–4–2(c)(2) has been amended since our decision in *Mayles v. Shoney's, Inc.,* the statute continues to provide two separate and distinct methods of proving "deliberate intention" by stating, in pertinent part:

This requirement [of "deliberate intention"] may be satisfied only if:

(i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

■ In this case, Ms. Miller seeks to prove "deliberate intention" through the five-element test enunciated in W.Va.Code 23–4–2(c)(2)(ii) (1994). Syl. pt. 2 of *Mayles v. Shoney's, Inc.,* states:

A plaintiff may establish 'deliberate intention' in a civil action against an employer for a work-related injury by offering evidence to prove the five specific requirements provided in W.Va.Code § 23–4–2(c)(2)(ii) (1983).

*In accord* Syl pt. 2, *Sias v. W–P Coal Co., supra;* Syl. pt. 2, *Blevins v. Beckley Magnetite, Inc., supra.*

In order to prevail under the statute all five elements must be present. In this summary judgment case, although Ms. Miller is correct in alleging that issues of fact exist concerning some of the five elements, Ms. Miller failed to show that the hospital violated a safety statute or standard as required in subpart C of W.Va.Code 23–4–2(c)(2)(ii) (1994). In *Mayles v. Shoney's, Inc.,* 185 W.Va. at 95, 405 S.E.2d at 22, we noted that a violation of a safety statute or standard

... involves proof that the specific unsafe working condition constituted a violation of a state or federal safety statute whether cited or not, or constituted a violation of a commonly accepted and well-known safety standard within the industry or business of the employer which statute or standard was specifically applicable to the particular working condition involved, as contrasted with a statute or standard

generally requiring safe working conditions.

*See Mayles v. Shoney's, Inc.* 185 W.Va. at 95, 405 S.E.2d at 22 (plaintiff's expert testified that specific OSHA regulations had been violated); *Sias v. W–P Coal Co.,* 185 W.Va. at 574, 408 S.E.2d at 327 ("employer was cited by MSHA for this incident of violating what is now designated as 30 C.F.R. § 75.203(a) (1990)). (Footnote omitted.)", *Blevins v. Beckley Magnetite, Inc.,* 185 W.Va. at 642 n. 6, 408 S.E.2d at 394 n. 6 (employer cited for MSHA safety regulations for failure to turn off dryer conveyor before clean up); *Beard v. Beckley Coal Min. Co.,* 183 W.Va. 485, 490, 396 S.E.2d 447, 452 (1990) (both MSHA and the W.V. Dept. of Mines cited the employer for "not maintaining sand in the sanding devices"); *Bell v. Vecellio & Grogan, Inc.,* 191 W.Va. 577, 447 S.E.2d 269 (1994) (per curiam), *rev'd on other grounds, Bell II, supra* (expert testimony on Maryland Occupational Safety and Health report generally).

■ Ms. Miller maintains that she has shown a violation of a safety statute or standard based on the general knowledge of the "cause and effect between high stress and clinical depression and other disorders."[3] However, a general allegation is not a "specific unsafe working condition [which] was a violation of a state or federal safety statute...." and neither does such an allegation automatically show a violation "of a commonly accepted and well-known safety standard within the industry" as required by W.Va. Code 23–4–2(c)(2)(ii)(C) (1994).

In *Sias v. W–P Coal Co.,* 185 W.Va. at 576, 408 S.E.2d at 328–29, we noted that W.Va. Code 23–4–2(c)(2)(iii)(B) indicated "deliberate intention" actions against employers should be given "prompt judicial resolution."[4]

---

3. In her brief, Ms. Miller argued:
    With regards to West Virginia Code Section 23–4–2(c)(2)(ii)(C), it has long been known, particularly in the medical industry that there is a cause and effect between high stress and clinical depression and other disorders. Because of this, it is common practice for management to not overstress their employees. In this case, management overstressed the Petitioner which resulted in clinical depression. In her response to the hospital's brief, Ms. Miller said: "OSHA's main thrust is employee safety and the high stress environment is definitely an unsafe condition."

4. W.Va.Code 23–4–2(c)(2)(iii)(B) (1994) provides, in pertinent part:

    (iii) In cases alleging liability under the provisions of the preceding paragraph (ii):

    *    *    *    *    *    *

    (B) Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure that one or

However, this language does not lessen the showing necessary for an award of summary judgment, but rather imposes a more substantive burden on plaintiffs under the five-element test of W. Va.Code 23–4–2(c)(2)(ii)(A–E) (1994). Syl. pt. 3 of *Sias v. W–P Coal Co.*, states:

> The portion of the statute which authorizes "prompt judicial resolution" of "deliberate intention" actions against employers, specifically, *W.Va.Code,* 23–4–2(c)(2)(iii)(B) [1983, 1991], relates to plaintiffs' more specific substantive law burden under the five-element test of *W.Va.Code,* 23–4–2(c)(2)(ii)(A)–(E) [1983, 1991], but the preexisting procedural law still applies for granting employers' motions for summary judgment, directed verdict and judgment notwithstanding the verdict.

*See Handley v. Union Carbide Corp.*, 620 F.Supp. 428 (S.D.W.Va.1985), *aff'd,* 804 F.2d 265 (4th Cir.1986).

In determining whether summary judgment was appropriate in this case, we apply our procedural law on motions for summary judgment. In Syl. pt. 2 of *Williams v. Precision Coil, Inc.*, we noted that summary judgment is appropriate "where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." After a motion for summary judgment is made, the nonmoving party, Ms. Miller, has the burden of production to show proof of a violation of a specific safety statute or standard. Syl. pt. 3, *Williams v. Precision Coil, Inc.*

In this case, Ms. Miller's statement about general knowledge of stress does not meet her burden of production to fulfill *W.Va. R.Civ.P.*, Rule 56(e)'s explicit mandate for "specific facts." Rule 56(e) states in pertinent part:

> more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist, and the court shall dismiss the action upon a timely motion for a directed verdict against the plaintiff if after considering all of the evidence and every inference legitimately and reasonably raised thereby most favorably to the plaintiff, the court determines that there is not sufficient evidence to find each and every one of the facts required to be proven by the provisions of

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him. (Emphasis added.).

Because Ms. Miller failed to offer concrete evidence that the hospital's acts violated a specific safety statute or standard as required by W.Va.Code 23–4–2(c)(2)(ii)(C) (1994) in response to the hospital's motion for summary judgment, we affirm the circuit court's finding that Ms. Miller failed to show that her claim falls within the "deliberate intention" exception to the employer immunity provisions of the Workers' Compensation Act, W.Va.Code 23–4–2(c)(1994).[5]

## B.

### Defamation

In her complaint, Ms. Miller alleged that the hospital through its servants, agents and employees, made "false defamatory statements [that] were published orally ... to third persons, who were employees of the Defendant." The alleged defamation was to have "accused the Plaintiff of participating in an immoral sexual affair with one of the married male professionals, [sic] at the Defendant's establishment." However in her brief, Ms. Miller did not assign a specific assignment of error to the circuit court's dismissal of the defamation issue, but argued it generally. The hospital, in its brief, argued in support of summary judgment on this issue contending that Ms. Miller failed to

> subparagraphs (A) through (E) of the preceding paragraph (ii)....

**5.** Although Ms. Miller's claim does not fall within the "deliberate intention" exception, because her claim is work-related, any remedy she may have is set forth in the Workers' Compensation Act, W.Va.Code 23–1–1 (1995) *et seq.* This opinion addresses neither the merits of her claim, nor its compensability under the Workers' Compensation Act.

demonstrate that the hospital was legally liable for the alleged defamation.[6]

■ Syl. pt. 1 of *Crump v. Beckley Newspapers,* 173 W.Va. 699, 320 S.E.2d 70 (1983) outlines the essential elements for a claim of defamation by stating:

> The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a non-privileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury.

*In accord* Syl. pt. 5, *Garrison v. Herbert J. Thomas Mem. Hosp. Assn.,* 190 W.Va. 214, 438 S.E.2d 6 (1993); *Rand v. Miller,* 185 W.Va. 705, 708–9, 408 S.E.2d 655, 658–59 (1991); *Crain v. Lightner,* 178 W.Va. 765, 772, 364 S.E.2d 778, 785 (1987).

Ms. Miller claims that the hospital is liable for the false statements made by a co-worker about Ms. Miller's alleged sexual involvement with another co-worker. The circuit court found that the such statements were not defamatory per se and that the hospital was not responsible for the actions of the co-worker.

■ The record indicates that Ms. Miller was unable to produce any evidence that the statement harmed her reputation. In *Crump v. Beckley Newspapers,* 173 W.Va. at 706, 320 S.E.2d at 77, we noted:

> A statement may be described as defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977); *see also* syl. pt. 1, *Sprouse v. Clay Communications [Communication], Inc.,* 158 W.Va. 427, 211 S.E.2d 674 (1975),

*cert. denied,* 423 U.S. 882, 96 S.Ct. 145, 46 L.Ed.2d 107, *reh. denied,* 423 U.S. 991, 96 S.Ct. 406, 46 L.Ed.2d 311 (statements are defamatory if they tend to "reflect shame, contumely, and disgrace upon [the plaintiff]").

In this case, Ms. Miller stated in an interrogatory answer that only two persons were present when the statement was made, and affidavits from both of these persons stated that they did not believe the statement to be true. The record does not demonstrate any harm to Ms. Miller's reputation. Based on the record as developed, especially the affidavits of the persons who heard the statement and Ms. Miller's depositions and interrogatory answers, we find that no evidence of one of the essential elements for a defamation claim.[7]

However, even if the statement resulted in some harm to Ms. Miller, there is no evidence linking the hospital to the alleged defamation. The hospital did not publish the false statement; the publisher, another employee of the hospital, did not supervise Ms. Miller; the statements were not ratified by the hospital; and the false statements were not made in the course of employment. This case lacks any nexus linking the alleged defamation to the hospital's conduct.

■ We have long held that although a corporation must act through its agents, the corporation "will not be liable for a libel published by one of its agents unless he was authorized thereto, or his acts subsequently ratified, but it is not necessary in a pleading to aver the method of proof to which the plaintiff will resort to sustain his case." *Barger v. Hood,* 87 W.Va. 78, 83, 104 S.E. 280, 282 (1920). In responding to the motion for summary judgment, Ms. Miller has the bur-

---

6. Ms. Miller's response to the hospital contentions about the dismissal of her defamation count does not deal with either the summary judgment order or the hospital's arguments. In her response, Ms. Miller stated: "Open verbal abuse which was untrue, uncalled for and derogatory was normal and continuous and resulted in degrading actions by eavesdroppers such as leaving 'soiling material' in her work area, damaging her car and phone harassment."

7. Because summary judgment should be denied when there is a dispute about the conclusion to be drawn from evidentiary facts (*Williams v. Precision Coil, Inc.,* 194 W.Va. at 59, 459 S.E.2d at 336), the determination of whether false statements were defamatory is not generally susceptible to disposition by summary judgment. However, in this case we need not determine if the evidence about the statement could lead a rational trier of fact to find that the statement were defamatory because Ms. Miller does not seek recovery from the publisher, a co-worker.

den of production to provide specific facts to show the author of the statement was authorized to act by the hospital or that her action was subsequently ratified by the hospital. No specific facts were provided by Ms. Miller as required by Rule 56(e), *W.Va.R.Civ.P.* "[M]ere allegations" are insufficient in response to a motion for summary judgment to show "that there is a genuine issue for trial." Rule 56(e). *See supra* p. 410, 475 S.E.2d at 502 for pertinent text of Rule 56(e).

Because Ms. Miller failed to present any facts which would lead a rational trier of fact to impute liability to the hospital for the alleged defamation, we affirm the circuit court's granting of summary judgment dismissing Ms. Miller's defamation count against the hospital.

For the above stated reasons, we affirm the order of the Circuit Court of Berkeley County.

Affirmed.