No. 48,087

Shawnee Township Fire District No. 1, *Appellant*, v. Roger F. Morgan, *Appellee.*

(559 P. 2d 1141)

272

Opinion filed January 22, 1977.

*Edward M. Boyle,* of Payne & Jones, Chartered, of Olathe, argued the cause and was on the brief for the appellant.

*Barton Brown,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, argued the cause, and *Douglas Lancaster,* of Wagner, Leek & Mullins, of Shawnee Mission, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an action for damages which resulted from a collision between a fire truck owned by Shawnee Township Fire District No. 1 and an automobile owned and driven by Roger F. Morgan. The collision took place at 87th and Pflumm Road in Johnson County, Kansas. The plaintiff fire district sued to recover property damage. Defendant counterclaimed for property damage and personal injury. The jury returned a verdict against both parties and plaintiff appeals.

On March 6, 1972, a fire occurred in the vicinity of 79th and Lackman Road in Johnson County, Kansas. Plaintiff's driver, Paul Bishoff, responded in plaintiff's fire truck to a call for additional equipment at the fire. As Bishoff departed the Lenexa Fire Station, he turned left to Pflumm Road, then turned right and proceeded north on Pflumm. The speed limit on Pflumm was 25 miles per hour. The intersection of 87th and Pflumm was controlled by stop signs protecting 87th Street. At the time of the accident, 87th Street, running east and west, was a through street with a speed limit of 35 miles per hour.

As Bishoff approached the intersection he looked east and saw nothing. He could see 900 feet east on 87th. He then looked west and did not look east again before entering the intersection. Defendand was westbound on 87th and struck the fire truck on the rear

right side. The impact rolled the fire truck and it came to rest on its top with its front facing northeast.

Plaintiff contended defendant was negligent in the following particulars:

1. Failure to maintain a proper lookout.
2. Failure to keep his vehicle under control so as to avoid an accident.
3. Failure to yield the right of way to an emergency vehicle.
4. Traveling in excess of the posted speed limit.
5. Traveling in excess of speeds reasonable and safe under existing circumstances.
6. Driving while intoxicated.

Defendant denied these allegations and asserted plaintiff was negligent in the following particulars:

1. Failure to keep his vehicle under control so as to avoid an accident.
2. Failure to maintain a proper lookout.
3. Failure to yield the right of way to defendant.
4. Traveling in excess of speeds reasonable and safe under existing circumstances.

At trial, plaintiff introduced testimony as to the speed of defendant's car by developing evidence of tire skid marks. These skid marks measured 79.5 feet for the left front tire, 61 feet for the left rear tire, 65 feet for the right front tire and 61.5 feet for the right rear tire. Skid tests were conducted by the Johnson County sheriff's office and the Kansas Highway Patrol. At 35 miles per hour the average skid was 49 feet. An accident reconstruction expert testified that based upon all the relevant factors which should be considered, defendant's car was going 52 miles per hour as it began to skid. Maximizing all factors in favor of defendant, the speed was reduced to 43.5 miles per hour; maximizing all factors in favor of plaintiff, the speed increased to 63.3 miles per hour.

Defendant testified he was going only 30 to 35 miles per hour as he traveled west on 87th. Defendant's wife, who was a passenger in the car, testified she had no opinion as to the speed of the car, but she knew it was not going too fast.

Several witnesses testified to the speed of the fire truck as it went through the intersection. A nearby apartment dweller testified she stepped out onto her balcony, which faced Pflumm Road, when she heard the siren. She watched the fire truck approach the intersection and almost come to a stop before proceeding into the intersection. Greg Garrett, who was westbound on 87th and

had turned left to proceed south on Pflumm, estimated the speed of the fire truck to be about 25 miles per hour when it was 75 to 125 feet from the intersection. He also stated the truck slowed down before proceeding into the intersection. The driver of the truck testified he was in second gear as he approached the intersection and was reducing speed. Top speed in this gear was 15 miles per hour and he reduced his speed to 10 miles per hour as he entered the intersection.

Defendant testified the truck was traveling 30 to 35 miles per hour, but testified he did not see the vehicle until it was about 100 feet from the intersection and didn't realize it was a fire truck until it was immediately in front of him. Defendant's wife did not see the truck until a second before the collision and she gave no estimate of its speed.

Evidence included testimony concerning the operation of the siren on the fire truck. One witness testified she was following the fire truck as it proceeded toward the scene of the collision. She stated she heard the siren at least a block away and at the time of the impact she was between one and one-half and two blocks behind the fire truck and could hear the siren. The apartment dweller testified she heard the siren when the truck was about 500 feet away and the noise became even louder as the truck passed the apartment complex. Garrett stated he did not hear the siren until he was approximately 100 feet south of the intersection and at that time the fire truck was 25 feet from him, or 125 feet south of the intersection. When he observed the fire truck he pulled over to the right side of the road and stopped. The driver of the emergency vehicle testified he ran the siren continuously from the fire house until the collision occurred. He indicated the siren was free-wheeling and would run for a block after it was wound. By running it up and down in this manner it would catch more attention. He testified the siren was audible for 500 feet or more, and he noticed that as he headed north on Pflumm, cars coming toward him pulled off onto the side of the road.

Both the Morgans testified they never heard the siren. They also stated the windows of the car were rolled up and the air conditioner and radio were on.

Bishoff testified the emergency lights, which consisted of a beacon ray and two pancake lights on the roof, were in operation

from the station to the accident site. Garrett confirmed the lights were on. No testimony disputed the use of emergency lights.

Plaintiff introduced testimony to establish that defendant was intoxicated at the time of the accident. Ambulance driver Leslie Leford assisted defendant onto a stretcher after the accident and noted defendant was uncooperative and belligerent. Leford detected the odor of alcohol on defendant. He also noticed two small plastic glasses on the floorboard of defendant's car. Leford's assistant testified that in his judgment there was a strong odor of alcohol in the ambulance, which he felt was emanating from defendant. The officer in charge of investigating the accident reported defendant's condition as normal, but he did recall persons at the scene had smelled alcoholic beverages. For this reason he had an officer proceed to the hospital and talk to defendant. Defendant refused to talk with police until he had consulted his attorney.

At trial defendant and his wife denied defendant had been drinking, although he admitted having lunch where alcoholic beverages were served.

At the conclusion of evidence the court gave the jury various instructions. These included, among others, standard instructions on negligence and contributory negligence, the right of a person to assume other drivers will obey the law, the duty of a driver to keep his vehicle under control, the duty of a driver to keep a proper lookout, and the duty to drive at a reasonable and prudent speed. The court, using a modified version of PIK Civil 8.01, instructed on standards of care as follows:

"INSTRUCTION No. 10

"As standards of ordinary care certain duties are imposed by law. These rules apply to the motoring public in general, but immunities as set out in these instructions are granted to certain authorized emergency vehicles. It is for you to decide from the evidence whether or not any of the following duties or laws apply in this case and whether or not any have been violated.

"The violation of a duty or law, if an immunity does not exist, is negligence upon which a recovery can be based when such negligence is a direct cause of the injury and damage."

The immunities granted an emergency vehicle were set forth in Instruction 14:

"INSTRUCTION No. 14

The laws of Kansas provide that every driver of a vehicle approaching a stop sign shall stop and yield the right of way to any vehicle which has en-

tered the intersection from another highway or which is approaching so closely as to constitute an immediate hazard.

"The laws of Kansas further provide that the driver of an authorized emergency vehicle, when responding to a fire alarm, may proceed past a stop sign, but only after slowing down as may be necessary for safe operation.

"The privileges granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal admitting a sound audible under normal conditions for a distance of not less than 500 feet and also making use of two alternating flashing lights or a flashing dome light.

"Negligence in the operation of an emergency vehicle cannot be predicated upon a mere showing of disregard of a stop sign.

"The privilege granted to an authorized emergency vehicle shall not relieve the driver from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his ordinary negligence or reckless disregard for the safety of others."

Plaintiff propounded instructions as to the standard of care for an emergency vehicle driver, based on *Scogin v. Nugen*, 204 Kan. 568, Syl. 4, 464 P. 2d 166; an instruction on the duty of a motor vehicle to yield to an emergency vehicle, based on PIK Civil 8.32; and an instruction as to intoxication affecting negligence, based on PIK Civil 8.84. The court refused each of these instructions and gave the jury no similar instructions.

On appeal plaintiff contends it was error to fail to instruct the jury on matters set forth in its proposed instructions. Defendant admits one or more of the instructions were deficient, but contends the errors are harmless since the fire vehicle was not entitled to the exemptions set forth in K. S. A. 1971 Supp. 8-505 (*c*) (now K. S. A. 8-1506 [*b*]).

Defendant admits the plaintiff's vehicle was a fire truck operated by a volunteer fireman at the time of the accident. He also admits the evidence proved its lights were flashing, as required by K. S. A. 8-597 (*c*) [Corrick] (now K. S. A. 8-1720), and the siren was sounding, as required by K. S. A. 8-5,102 (*c*) [Corrick] (now K. S. A. 8-1738 [*d*]); but he argues this did not entitle the driver of the vehicle to the privileges and immunities of K. S. A. 1971 Supp. 8-505. Under defendant's interpretation of the statutes plaintiff was not entitled to those exemptions because there was no proof the siren on the truck was (1) audible for five hundred feet, and (2) of a type approved by the department of motor vehicles of the highway commission, as required in K. S. A. 8-5,102 (*c*).

We cannot agree. First, the testimony of several witnesses supplied substantial credible evidence that the fire truck was operating under a siren which could be heard from a distance of five hun-

dred feet or more. Second, we do not believe the legislature intended to deny an emergency vehicle enumerated privileges and immunities in a civil suit for failure to comply with the mere formality of obtaining approval of the department.

Reasonableness requires us to hold that a twenty-two-foot fire truck, painted bright red, with a beacon light and two flashing red lights, and a siren heard by persons a block and a half or two blocks away is an emergency vehicle.

It is the duty of the district court to properly instruct the jury. In a motor vehicle case the court has the duty to instruct on applicable statutes. (*Wegley v. Funk*, 201 Kan. 719, 723, 443 P. 2d 323; *Blakeman v. Lofland*, 173 Kan. 725, 732, 252 P. 2d 852.) A party is entitled to an instruction explaining the theory of his case where evidence is introduced in support thereof. (*Simms v. Webb*, 219 Kan. 675, 676, 549 P. 2d 570; *Hays v. Moscow Alfalfa Products, Inc.*, 217 Kan. 184, 535 P. 2d 461, and cases cited therein.) The test for the necessity to instruct on an issue is set forth in *Hunter v. Brand*, 186 Kan. 415, 350 P. 2d 805:

"Where trials are by jury, it is the sole province of the court to decide questions of law as distinguished from questions of fact. In the performance of that duty, it is incumbent upon the court to instruct the jury on the law applicable to the theories of both parties, insofar as such theories are supported by competent evidence. The instructions must be limited to those issues supported by some evidence. Where no evidence is presented or the evidence is undisputed and is such that reasonable minds cannot accept it as sufficient to establish the existence of a fact, it becomes the duty of the court to remove the issue from the jury. In that event, the issue becomes a question of law for the court's determination. (*Schmid v. Eslick*, supra, p. 1004, and cases cited therein.)" (p. 419.)

Because plaintiff's driver was the operator of an authorized emergency vehicle he was entitled to the privileges and immunities set forth in K. S. A. 1971 Supp. 8-505 (c) (now K. S. A. 8-1506 [b]), which stated:

"(c) The driver of an authorized emergency vehicle may: (1) Park or stand, irrespective of the provisions of this act. (2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation. (3) Exceed the maximum speed limits so long as he does not endanger life or property. (4) Disregard regulations governing direction of movement or turning in specified directions."

Although the statute endowed the driver with certain immunities, they were not absolute in nature. K. S. A. 1971 Supp. 8-505 (e) (now K. S. A. 8-1506 [d]) provided:

"(e) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

K. S. A. 8-536 [Corrick] (now part of K. S. A. 8-1506), relating to speed limitations, provided:

"The speed limitations set forth in this act shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle. This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street or highway, nor shall it protect the driver of any such vehicle from the consequence of a reckless disregard of the safety of others."

K. S. A. 1971 Supp. 8-554 (now K. S. A. 8-1530) included the following provision:

"(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

It is important to recognize that K. S. A. 8-505 (e) [Corrick] was amended after this court last construed it in Scogin v. Nugen, supra. The phrase "ordinary negligence," which established the standard of care for emergency vehicle drivers in Scogin, was deleted by the legislature in 1970. Because it is a fundamental rule of law that a change in phraseology or the deletion of a phrase in amending or revising a statute raises a presumption that a change of meaning was also intended, the standard of care set forth in Scogin is not controlling in this case. (McGowen v. Southwestern Bell Tel. Co., 215 Kan. 887, 891, 529 P. 2d 97, and cases cited therein.)

Our reading of K. S. A. 1971 Supp. 8-505 (e), as amended by the legislature in 1970, leads us to the conclusion that the standard of "ordinary negligence" is no longer applicable to the driver of an emergency vehicle. (See, Bennett, The 1970 Kansas Legislature in Review, 39 J. B. A. K. 107, 108 [1970].) The phrase "ordinary negligence" should have been deleted from Instruction 14.

The standards of care charged to the driver of an emergency vehicle and to the driver of an ordinary vehicle are not the same. The privileges and immunities granted to the driver of an emergency vehicle are not available to the driver of an ordinary vehicle. Notwithstanding the grant of immunities, the statutes require the driver of an emergency vehicle to drive with "due regard for the safety of all persons," and further provide the immunities do not protect the driver from the consequences of his "reckless disregard for the

safety of others." Even though the use of the word "reckless" suggests an element of wantonness, we believe it was the intent of the legislature to charge the driver of an emergency vehicle with due care under the existing facts and circumstances. The facts and circumstances include the privileges and immunities granted by statute. The test of due care (or due regard as used in the statute), as applied to the driver of an emergency vehicle, is whether with the privileges and immunities provided by statute he acted as a reasonably careful driver.

An important factor to be considered under this test is the right of the driver of an emergency vehicle to rely on the duty of an ordinary driver. Under K. S. A. 1971 Supp. 8-554 (now K. S. A. 8-1530) the driver of an ordinary vehicle is under a duty to yield the right of way to an emergency vehicle by immediately pulling parallel and as close as possible to the right edge or side of the road, clear of any intersection, and remaining there until the emergency vehicle has passed. Although the driver of an emergency vehicle is not permitted to act on the blind assumption that this will be done, he has the right to assume other drivers will yield the right of way as required by law until it is otherwise apparent. (*Scogin v. Nugen,* supra at 571.) The district court instructed the jury that each driver had the right to assume the other would obey the law, but it erred in failing to instruct the jury that under the law defendant was under a duty to yield the right of way to plaintiff's emergency vehicle.

We agree with plaintiff that the jury should have been instructed also on defendant's intoxication as a contributing factor in the accident. (See PIK Civil 8.84.) This was an issue in the theory of plaintiff's case and there was sufficient evidence to submit it to the jury.

Applying what we have said to the facts of this case, we believe the district court erred in using the phrase "ordinary negligence" in Instruction 14, in failing to instruct on the test of due care for the driver of an emergency vehicle, in failing to instruct on the duty of a motorist to yield to an emergency vehicle, and in failing to instruct on intoxication.

Finally, both plaintiff and defendant urge this court to hold that they are entitled to a directed verdict as a matter of law. The record discloses the evidence was conflicting on the issues of negli-

gence, contributory negligence and proximate cause and under these circumstances a directed verdict is not available to either party.

For the reasons set forth in the opinion, the case is reversed and remanded for a new trial.