(732 P.2d 788)
No. 58,961

STATE OF KANSAS, *Appellee*, v. JOSEPH SIMPSON, *Appellant*.

Opinion filed February 12, 1987.

*G. H. Griffeth*, of Rost, Rost & Griffeth, of Topeka, for the appellant.

*Henry Otto III*, assistant county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before ABBOTT, C.J., JAMES P. BUCHELE, District Judge, assigned, and DANIEL L. HEBERT, District Judge, assigned.

ABBOTT, C.J.: This is a direct appeal by Joseph C. Simpson from his convictions for reckless driving (K.S.A. 1986 Supp. 8-1566) and passing in a no-passing zone (K.S.A. 8-1520[b]). Simpson was performing his duty as a police officer for the City of St. George, Kansas, and was pursuing a traffic offender with his siren and flashing lights activated when the incident leading to the traffic citations occurred.

Simpson was headed west on old highway 24 pursuing a vehicle that was attempting to elude him. It was dark and the road was narrow and hilly with soft shoulders. Simpson was familiar with the sight distances and all other pertinent aspects of the road he was traveling.

The fleeing vehicle passed two westbound cars. Simpson also attempted to pass the two westbound cars, which were approxi-

mately 1-½ to 2 car lengths apart. In doing so, he pulled into the eastbound lane of traffic, which was clearly marked, "No passing." After he passed the first westbound car near the crest of a hill, a pickup appeared in the eastbound lane of traffic traveling east. Simpson then attempted to go left and the police car was struck nearly broadside after it left the highway.

Simpson conceded at trial that a driver of an ordinary car would be guilty of reckless driving and passing in a no-passing zone. We agree. Simpson contends that as a driver of an authorized emergency vehicle, his conduct was privileged under K.S.A. 8-1506 and *Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655 (1983). However, we agree with the trial judge that *Thornton v. Shore* is not controlling. *Thornton* involved consolidated wrongful death actions arising from an accident caused by the defendant, Donald Bender, who ran a stop sign while trying to elude a police officer (defendant Shore). The collision marked the end of a high-speed chase in the City of Lawrence, in which Officer Shore was pursuing Bender for traffic violations. Officer Shore's car was not physically involved in the collision. The trial court found that Shore was in compliance with K.S.A. 8-1506 and therefore immune from liability. The trial court granted summary judgment in favor of Shore.

The appellants in *Thornton* contended that under K.S.A. 8-1506(d) the officer still had a duty, even with the statutory privileges, to drive with due regard for the safety of others, and that the officer violated this duty by continuing to chase the traffic violator when his extreme recklessness became apparent. The Supreme Court disagreed.

After stating that "[t]he privileges and immunities granted to police officers under K.S.A. 8-1506 would indeed be hollow if the test of due care . . . were extended to include the acts of the fleeing motorist whom the officer is trying to apprehend," 233 Kan. at 745, the court then noted a series of outside cases which held that law enforcement officers are not liable for the acts of a fleeing motorist. The Kansas Supreme Court adopted the majority view, finding:

"[T]he *due care* requirement of K.S.A. 8-1506(d) *applies only to the police officer's physical operation of his own vehicle* and not to the *decision* to chase or *continue to chase* a law violator. If the officer is in compliance with the statute in

the operation of his own vehicle, he is entitled to the privileges and immunities afforded by the statute and is not vicariously liable or responsible for the reckless or negligent acts of the law violator he is pursuing. The officer is not the insurer of the fleeing law violator. The officer in such circumstances has breached no duty owed to persons injured by the fleeing violator's own negligence or wanton conduct and, accordingly, as a matter of law the officer has not committed a tort upon such injured persons." (Emphasis supplied.) *Thornton v. Shore*, 233 Kan. at 753.

The holding in *Thornton* is a policy determination that law enforcement officers should not be held vicariously liable for the acts of fleeing motorists. The issue in the present case does not concern the vicarious liability of Officer Simpson for the negligent acts of another. Instead, the question presented is whether the trial court erred in finding that, even with the privileges contained in K.S.A. 8-1506, the defendant was guilty beyond a reasonable doubt of reckless driving and passing in a no-passing zone.

A law enforcement officer has the right to pursue a violator of the law in the manner set forth in K.S.A. 8-1506, which provides:

"(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(b) The driver of an authorized emergency vehicle may:

"(1) Park or stand, irrespective of the provisions of this article;

"(2) Proceed past a red or stop signal or stop sign, *but only after slowing down as may be necessary for safe operation;*

"(3) Exceed the maximum speed limits *so long as such driver does not endanger life or property;*

"(4) Disregard regulations governing direction of movement or turning in specified directions; and

"(5) Proceed through toll booths on roads or bridges without stopping for payment of tolls, *but only after slowing down as may be necessary for safe operation* and the picking up or returning of toll cards.

"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of K.S.A. 8-1738 and visual signals meeting the requirements of K.S.A. 8-1720, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

"(d) The *foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all*

*persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others."* (Emphasis supplied.)

Simpson contends that the trial court held him to the same test as an ordinary person, *i.e.,* that the trial court did not consider the privileges and immunities afforded him under K.S.A. 8-1506. The trial court properly considered 8-1506 and this is evident throughout the record.

K.S.A. 8-1506 does not grant absolute immunity. It grants certain privileges to emergency vehicle drivers which are not available to the ordinary motorist. For example, an ordinary motorist must come to a complete stop at a red light or at a stop sign. The ordinary motorist does not have an option to drive through these traffic signals so long as he does so at a speed necessary for safe operation. Under 8-1506, the driver of an authorized emergency vehicle may commit such acts without committing traffic offenses. However, all the privileges enumerated in that statute are conditioned upon the privileged act being committed only after the safety of others has been taken into consideration. This condition is reemphasized in 8-1506(d).

The State argues that passing in a no-passing zone is not one of the five enumerated privileges in 8-1506(b). The wording of subsection 8-1506(a) that the driver of an authorized emergency vehicle "may exercise the privileges *set forth in this section"* is conducive to an argument that the privileges were meant to be limited to those five.

This court, as was the legislature, is cognizant of the necessity for emergency vehicles in an urban area to be permitted to cross double yellow lines in order to move through traffic, particularly at intersections. Without this authority, emergency vehicles would by necessity be forced to move at the same pace ordinary traffic is moving. We are of the opinion the legislature intended 8-1506(b)(4) and (d) to allow an authorized emergency vehicle to pass another vehicle in a no-passing zone so long as such passing does not endanger the safety of others. Subparagraph (d) specifically provides that the driver of an authorized emergency vehicle is *not* protected from the consequences of reckless disregard for the safety of others.

The trial court refused to find that a law enforcement officer could *never* pass in a no-passing zone, only that, under the

circumstances of this case, Simpson had no right to pass. Simpson was authorized, and the trial court so held, to pass another vehicle in the no-passing zone, so long as he did not endanger the safety of others in doing so. Simpson contends he had a right to rely on others obeying the law and yielding to him. In negligence law, that right extends only to the point where it becomes obvious that the other party is not going to yield. Here, there is no evidence that the two westbound vehicles and the oncoming car failed to yield to Simpson. In fact, the westbound cars were apparently attempting to get off the paved highway. The oncoming car had two choices: to proceed straight ahead or turn right off the highway. It chose the latter (*i.e.*, yielded to Simpson) and a collision followed.

The crux of this case is that Simpson *knowingly* passed in a no-passing zone, after dark, on a highway with which he was familiar, and placed himself and the two cars he was passing in a situation that, if an eastbound car came over the crest of the hill, one or more of the four vehicles would be forced to leave the paved highway at a high rate of speed and drive onto a soft shoulder or into a ditch in the dark. An eastbound car did appear, a dangerous emergency faced four vehicles, and a collision occurred.

Under the facts of this case, there was no way for Simpson to pass in the no-passing zone and show due regard for the safety of all persons. He had to know the risk involved in passing at that point, and thus he knowingly and intentionally accepted the risk of endangering the safety of others. This amounts to a reckless disregard for the safety of others. The trial court used the proper standards, and the record contains substantial competent evidence to support the convictions.

Affirmed.