No. 96,970

GABRIEL ROBBINS, *Appellant*, v. CITY OF WICHITA and NORMAN WILLIAMS and OTHER UNKNOWN POLICE OFFICERS OF THE WICHITA POLICE DEPARTMENT, *Appellees*.

(172 P.3d 1187)

Opinion filed December 14, 2007.

*Craig Shultz*, of Law Office of Craig Shultz, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Michael L. North*, assistant city attorney, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

ROSEN, J.: This is a wrongful death action brought against the City of Wichita, its chief of police, and several police officers for the death of Amy Robbins, who died as a result of a collision between the vehicle she was driving and a vehicle being pursued by Wichita police officers. Amy's husband, Gabriel Robbins, filed the lawsuit and now appeals the district court's decision to grant the defendants' motion for summary judgment on all of his claims.

## FACTS

The tragic events that led up to Amy Robbins' death began at approximately 11p.m. on October 5, 2004, when the Wichita Police Department received a 911 call from Sierra Roach. Sierra reported that her step-father, Jeffrey Drechsler, was causing a disturbance and had "messed up [the] house really badly." Drechsler had been drinking all evening and had locked Sierra out of the house. When Sierra returned to the house, she had a verbal altercation with Drechsler. Sierra's mother, Sharolyn Roach, stepped in between Sierra and Drechsler, and Drechsler started pushing both Sierra and Sharolyn. When Sierra called 911, Drechsler went into the attached garage of the residence. Sierra and Sharolyn then locked Drechsler in the garage. While Sierra was talking to the 911 op-

erator, Drechsler began breaking in the door from the garage to the house with an ax.

The 911 operator relayed Sierra's address near Bayley and Waverly Streets in Wichita to the police dispatcher, who assigned Officer Brent Woodard to respond to the domestic violence call. While Officer Woodard was en route to Sierra's house, Drechsler broke through the door with the ax. Sierra escaped out the front door with the phone and continued to talk to the 911 operator. Sharolyn, however, did not get out of the house, and Drechsler began chasing her with the ax. Drechsler pinned Sharolyn on a bed with his hand on her throat and the ax over her head. Drechsler then let Sharolyn off the bed and returned to the garage. Sharolyn ran out the door and hid outside the house. From their hiding places, Sharolyn and Sierra observed Drechsler break the windows in Sharolyn's car.

Before Officer Woodard reached Sierra's house, the dispatcher gave him a description of Drechsler and Drechsler's truck. The dispatcher further advised Officer Woodard that Drechsler had an ax. Officer Woodard asked the dispatcher for more information about what Drechsler was doing with the ax. The dispatcher replied that Drechsler was breaking in the door and further advised Officer Woodard that Sharolyn was in the house with Drechsler.

When Officer Woodard arrived at Sierra's house at 11:04 p.m., he parked two or three houses away on Waverly Street and approached the house on foot for safety reasons. While he was walking up to the house, he observed Drechsler get in the truck and leave. Officer Woodard could not see if Drechsler still had the ax. Officer Woodard returned to his vehicle and drove up behind Drechsler as Drechsler reached the intersection of Waverly and Lincoln. Officer Woodard activated his overhead lights to signal Drechsler to stop. Drechsler did not stop and proceeded to turn right onto eastbound Lincoln, driving with his headlights off. Officer Woodard activated his siren and began to pursue Drechsler.

Officer Pryor and her partner Officer Cornish were about a half block away when Drechsler drove away from the house. A few moments later, they observed Officer Woodard pursuing Drechsler with his lights and siren operating. Officer Pryor activated her lights

and siren and began pursuing Drechsler behind Officer Woodard. Officer Pryer was approximately 3 to 4 car-lengths behind Officer Woodard.

Traffic was light on Lincoln. Although Drechsler did not accelerate rapidly, he drove through a green light at the intersection of Lincoln and Woodlawn going approximately 50 miles per hour. Drechsler then accelerated to approximately 70 miles per hour on Lincoln, with Officer Woodard about 75 to 100 yards behind him.

When Drechsler reached the intersection of Lincoln and Rock Road, the traffic light was red. Drechsler ignored the light and proceeded into the intersection, decelerating slightly so he could turn right and go southbound on Rock Road toward Harry Street. As Drechsler made the turn, he traveled across the two southbound lanes, through the left turn lane, and into the northbound lanes of Rock Road. After driving southbound in the northbound lanes of Rock Road for approximately one-half block to one block, Drechsler returned to the southbound lanes and began accelerating to 65 or 70 miles per hour. Officers Woodard and Pryor slowed down at the intersection of Lincoln and Rock Road to clear the intersection safely. Although there was no other traffic at the intersection, traffic on Rock Road was a little heavier than that on Lincoln. Officers Woodard and Pryor accelerated after the intersection to speeds of 65 to 70 miles per hour. Officer Woodard continued to pursue Drechsler down Rock Road, remaining about 75 to 100 yards behind Drechsler.

Officer Jackson heard Officer Woodard reporting the pursuit on the radio while he was driving on Harry near Rock Road. Planning to put spikes in the road to stop Drechsler's truck, Officer Jackson parked near the intersection of Harry and Rock Road and activated his overhead lights. However, Officer Jackson was unable to deploy the spikes because he could not locate any spikes in his vehicle. As Officer Jackson returned to his patrol car, he observed Drechsler followed by Officers Woodard and Pryor proceeding through the intersection of Harry and Rock Road with a green light.

Officer Tucker was also in the vicinity of Harry and Rock Road and overheard Officer Woodard reporting the pursuit on the radio. Officer Tucker observed Officer Jackson at the intersection of

Harry and Rock Road, so he decided to turn south onto Rock Road and head toward the intersection of Rock Road and Pawnee to block traffic on Pawnee. When Officer Tucker turned south onto Rock Road, Drechsler was approximately one-half block behind him. Officer Tucker did not activate his lights or siren and did not exceed the speed limit as he was driving toward the intersection of Rock Road and Pawnee. Prior to reaching Pawnee, Officer Tucker could see that Drechsler was going to overtake him. Officer Tucker pulled over to the right side of the road near the curb to prevent Drechsler from thinking Officer Tucker was trying to block his path and force him into oncoming traffic.

A few seconds before Drechsler reached the intersection of Rock Road and Pawnee, Sergeant Tronsgard got on the radio and asked the dispatcher to call Sierra to determine if anyone was injured. Sergeant Tronsgard stated later that if there were no injuries he would have terminated the chase and issued a ticket.

However, 10 seconds later, before Sergeant Tronsgard could ascertain whether there were any injuries at Sierra's house, Drechsler broadsided the car driven by Amy Robbins at the intersection of Rock Road and Pawnee. Amy's husband, Gabriel Robbins, was in the car behind Amy's and observed the accident. Both Drechsler and Amy died as a result of the accident. The approximate time lapse from when Officer Woodard began following Drechsler to the fatal crash was a little over 2 minutes.

Robbins filed a wrongful death action against the city of Wichita, the chief of police, and the police officers involved in the pursuit (the defendants). The defendants filed a motion for summary judgment. The district court granted the motion for summary judgment, concluding that the defendants did not owe a duty of care to Amy. Robbins appealed to the Court of Appeals, and the matter was transferred to this court on Robbins' motion to transfer pursuant to K.S.A. 20-3017.

## ANALYSIS

When reviewing a motion for summary judgment, an appellate court applies the same standard as the district court.

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]' " *Sall v. T's, Inc.*, 281 Kan. 1355, 1360, 136 P.3d 471 (2006) (quoting *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 [2002]).

Robbins argues that the district court erred when it concluded that the defendants did not owe a duty of care to Amy. To establish a claim for wrongful death based on negligence, a plaintiff must prove the existence of a duty, breach of the duty, injury, and a causal connection between the breach of the duty and the injury suffered. *Reynolds v. Kansas Dept. of Transportation*, 273 Kan. 261, 266, 43 P.3d 799 (2002). Whether there is a duty is a question of law, but whether the duty has been breached is a question of fact. Appellate courts review the question of whether a duty exists using a de novo standard. *South v. McCarter*, 280 Kan. 85, 94, 119 P.3d 1 (2005).

*Thornton v. Shore*, 233 Kan. 737, 753, 666 P.2d 655 (1983), is on point with this case. In *Thornton*, a University of Kansas police officer observed a motorist driving 15 miles per hour over the speed limit at about 1:30 in the morning. The officer activated his emergency lights and pulled up behind the vehicle to stop it. Instead of stopping, the driver sped up. The officer turned on his siren and pursued the vehicle. During the pursuit, the driver of the fleeing vehicle exceeded the speed limit, ran stop signs, and drove recklessly. The pursuit ended when the driver ran a stop sign and collided with the decedent's car. The plaintiff claimed that the officer breached the duty of care required by K.S.A. 8-1506(d), which exempts emergency vehicles from basic traffic laws but requires drivers of emergency vehicles "to drive with due regard for

the safety of all persons." 233 Kan. at 741. Affirming the district court's decision to grant the defendants' motion for summary judgment, the *Thornton* court held that the decision to pursue or continue a pursuit is not included in the statutory mandate to drive with due regard. 233 Kan. at 753. The *Thornton* court stated:

"We conclude the 'due care' requirement of K.S.A. 8-1506(d) applies only to the police officer's physical operation of his own vehicle and not to the decision to chase or continue to chase a law violator. If the officer is in compliance with the statute in the operation of his own vehicle, he is entitled to the privileges and immunities afforded by the statute and is not vicariously liable or responsible for the reckless or negligent acts of the law violator he is pursuing. The officer is not the insurer of the fleeing law violator. The officer in such circumstances has breached no duty owed to persons injured by the fleeing violator's own negligence or wanton conduct and, accordingly, as a matter of law the officer has not committed a tort upon such injured persons. There being no tort, as a matter of law, reference to the Tort Claims Act (K.S.A. 1982 Supp. 75-6101 *et seq.*) is rendered unnecessary." 233 Kan. at 753.

Like the plaintiff in *Thornton*, Robbins claims that the officers' decision to pursue Drechsler was negligent. Robbins also claims that the officers executed the pursuit in a negligent manner in violation of the Wichita Police Department pursuit policies. Although *Thornton* is on point, Robbins asks us to review and overturn it. Robbins raises three arguments in support of overturning *Thornton*. First, the *Thornton* decision does not adequately address K.S.A. 8-1506. Second, the *Thornton* decision is no longer in accord with the majority of jurisdictions addressing the issue. Third, the policy considerations expressed in *Thornton* are outdated and unfounded. Analyzing the first issue requires a review of a variety of differing interpretations from multiple jurisdictions; thus, we will address the first two issues as one.

### K.S.A. 8-1506 and Majority and Minority Court Interpretations

Robbins asserts that K.S.A. 8-1506 imposes a duty on the operators of emergency vehicles to drive with "due regard for the safety of all persons." According to Robbins, *Thornton* ignores this duty. Robbins relies on the dissenting opinion in *Thornton*, which stated:

"[T]he privileges provided in K.S.A. 8-1506 are limited. To avail oneself of the privileges a driver of an authorized emergency vehicle must give warning with flashing lights and siren. Even with the warnings, however, the driver must operate the vehicle with due regard for the safety of all persons. The majority holds whenever a high speed chase results in a collision between the person pursued and a third party, the pursuing officer has, as a matter of law, met the 'due regard' standard of K.S.A. 8-1506(d) by merely turning on the warning signals. I disagree. Due regard and due care are questions of fact and should remain so. There are numerous scenarios where an accident is caused by one not a party to the collision. It is a question of causation." 233 Kan. 754 (Herd, J. dissenting).

K.S.A. 8-1506 exempts authorized emergency vehicles from traffic laws when they are involved in an emergency situation, providing:

"(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(b) The driver of an authorized emergency vehicle may:

(1) Park or stand, irrespective of the provisions of this article;

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(3) Exceed the maximum speed limits so long as such driver does not endanger life or property;

(4) Disregard regulations governing direction of movement or turning in specified directions; and

(5) Proceed through toll booths on roads or bridges without stopping for payment of tolls, but only after slowing down as may be necessary for safe operation and the picking up or returning of toll cards.

"(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of K.S.A. 8-1738 and visual signals meeting the requirements of K.S.A. 8-1720, except that an authorized emergency vehicle operated as a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the *duty to drive with due regard for the safety of all persons*, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others." (Emphasis added.)

After carefully reviewing the *Thornton* decision, we believe that Robbins has mischaracterized the *Thornton* holding. The *Thornton* court dissected the plaintiff's claim into two parts: the decision to

pursue and the physical operation of the emergency vehicle. The *Thornton* court recognized the duty to "drive with due regard for the safety of all others" imposed by K.S.A. 8-1506 but limited the duty to the physical operation of the emergency vehicle. The *Thornton* court specifically excluded the decision to pursue from the duty, stating that the operator of the emergency vehicle is not "responsible for the reckless or negligent acts of the law violator he is pursuing." 233 Kan. at 753. Although the *Thornton* court recognized a duty of care in regard to the physical operation of the emergency vehicle, it found that, based on the uncontroverted facts, the officer operated his emergency vehicle in compliance with K.S.A. 8-1506. 233 Kan. at 753. Thus, there were no facts to establish that the officer breached the duty of care.

Contrary to Robbins' argument, *Thornton* stands for the proposition that K.S.A. 8-1506 imposes a duty on the operator of any emergency vehicle to drive with due regard for the safety of all persons. See *State v. Simpson*, 11 Kan. App. 2d 666, 732 P.2d 788 (1987) (affirming a police officer's convictions for reckless driving and passing in a no-passing zone even though the officer was pursuing a vehicle that was attempting to elude him). Appellate courts from a large number of other states with statutes similar to K.S.A. 8-1506 have also interpreted their statutes to impose a duty of care on law enforcement officers involved in a vehicle pursuit. See, *e.g.*, *Estate of Aten v. City of Tuscon*, 169 Ariz. 147, 817 P.2d 951 (1991); *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000); *Pearson v. City of Atlanta*, 231 Ga. App. 96, 499 S.E.2d 89 (1998); *Arnold v. Village of Chicago Ridge*, 181 Ill. App. 3d 778, 537 N.E.2d 823 (1989); *Robinson v. City of Detroit*, 462 Mich. 439, 613 N.W.2d 307 (2000); *Eklund v. Trost*, 335 Mont. 112, 151 P.3d 870 (2006); *Mitchell v. State*, 108 A.D.2d 1033, 486 N.Y.S.2d 97 (1985); *Parish v. Hill*, 350 N.C. 231, 513 S.E.2d 547 (1999); *Jones v. Ahlberg*, 489 N.W.2d 576 (N.D. 1992); *Kelly v. City of Tulsa*, 791 P.2d 826 (Okla. App. 1990); *Lowrimore v. Dimmitt*, 310 Or. 291, 797 P.2d 1027 (1990); *Seide v. State*, 875 A.2d 1259 (R.I. 2005); *Clark v. South Carolina Dept. Of Public Safety*, 353 S.C. 291, 578 S.E.2d 16 (2003); *Haynes v. Hamilton County*, 883 S.W.2d 606 (Tenn. 1994); *Travis v. City of Mesquite*, 830 S.W.2d

94 (Tex. 1992); *Day v. State ex rel. D. of Public Safety*, 980 P.2d 1171 (Utah 1999); *Colby v. Boyden*, 241 Va. 125, 133, 400 S.E.2d 184 (1991); *Mason v Bitton*, 85 Wash. 2d 321, 534 P.2d 1360 (1975); *Sergent v. City of Charleston*, 209 W.Va. 437, 549 S.E.2d 311 (2001); *Peak v. Ratliff*, 185 W. Va. 548, 408 S.E.2d 300 (1991); *Estate of Cavanaugh v. Andrade*, 202 Wis. 2d 290, 550 N.W.2d 103 (1996).

Three states are in accord with *Thornton*, holding that the decision to pursue or continue pursuing is not included in the operation of the vehicle and thus not subject to the duty of due regard. See *Robinson v. City of Detroit*, 462 Mich. at 458 (overruling *Fiser v. Ann Arbor*, 417 Mich. 461, 339 N.W.2d 413 [1983], which held that a jury could find that high speed of the pursuit caused the fleeing driver to lose control, and *Rogers v. Detroit*, 457 Mich. 125, 579 N.W.2d 840 [1998], which held that a municipality could be liable for its officer's decision to pursue or continue a pursuit); *Kelly v. City of Tulsa*, 791 P.2d at 828 (stating that the duty cannot be imposed if there is no evidence that the emergency vehicle was being driven in an unsafe manner); *Estate of Cavanaugh v. Andrade*, 202 Wis. 2d at 316-17 (noting that an officer could be negligent "for failing to physically operate his or her vehicle with due regard for the safety of others").

*Majority view*

Robbins further argues that *Thornton* no longer reflects the majority view among other jurisdictions that have addressed this issue. Robbins relies on the Tennessee Supreme Court's decision in *Haynes v. Hamilton County*, in which the court overruled a prior decision that had limited liability to the physical operation of the vehicle. 883 S.W.2d at 610-11 (overruling *Kennedy v. City of Spring City*, 780 S.W.2d 164 [Tenn. 1989]). Interpreting a statute similar to K.S.A. 8-1506, the *Haynes* court's decision turned on additional statutory language not included in K.S.A. 8-1506. The additional language provided immunity for police officers and their employers " 'unless the conduct of the law enforcement personnel was negligent and such negligence was the proximate cause of the injuries to the third party.' " 883 S.W.2d at 609 (quoting Tenn.

Code Ann. § 55-8-108[e]). The *Haynes* court held that the term "conduct" should be broadly interpreted to include both the physical operation of the vehicle and the decision to commence or continue a pursuit when a reasonable officer would not do so. 883 S.W.2d at 610. In determining whether the officer's decision was reasonable, the *Haynes* court suggested weighing the risk to innocent third parties and the interest in apprehending suspects. 883 S.W.2d at 611. The *Haynes* court adopted the reasoning of a decision by the Maryland Supreme Court:

" 'Negligent operation of a car is not limited to the negligent manipulation of the gas pedal, steering wheel, or brake pedal, such as involved in speeding, failure to pay attention to what may be in front of the vehicle, failure to apply the brakes, etc. **A decision to operate or continue operating the car**, when a reasonable person would not do so, clearly can be 'negligent operation.' For example, if one decides to operate or to continue to operate a motor vehicle when he is dizzy or otherwise ill, he may be guilty of negligent operation. A decision to operate a car or to continue operating a car knowing that the brakes are faulty may obviously constitute the 'negligent operation' of the vehicle." 883 S.W.2d at 610 (quoting *Boyer v. State*, 323 Md. 558, 594 A.2d 121, 129 [1991]).

Three states are in accord with *Haynes*, holding that the decision to pursue or continue a pursuit is included in the operation of the vehicle. See *Boyer v. State*, 323 Md. at 575 (applying a gross negligence standard based on the Maryland Tort Claims Act and concluding as a matter of law that the evidence was insufficient to establish gross negligence); *Aiken v. Borough of Blawnox*, 747 A.2d 1282 (Pa. Commw. 2000) (reversing the trial court's decision granting summary judgment); *Travis v. City of Mesquite*, 830 S.W.2d at 99 (stating that "[t]he decision to initiate or continue pursuit may be negligent when the heightened risk of injury to third parties is unreasonable in relation to the interest in apprehending suspects").

We are persuaded by the reasoning of the *Haynes* and *Boyer* courts in refusing to distinguish between the decision to pursue and continue the pursuit from the method of pursuing. The language of K.S.A. 8-1506 requires the drivers of emergency vehicles to "drive with due regard for the safety of all persons." We believe the act of driving involves both the mental and physical components. Unlike the *Thornton* court, we are unable to distinguish

between the decision to pursue and the method of pursuing. Thus, we overrule that portion of the *Thornton* decision that exempts the decision to pursue and continue the pursuit from the duty found in K.S.A. 8-1506.

While we agree with the *Haynes* court's broader construction of the term operation to include the decision to pursue and continue the pursuit, we do not agree with the standard of care it applies. The *Haynes* court applied an ordinary negligence standard. 883 S.W.2d at 610. We note that some other jurisdictions apply the same ordinary negligence standard of care. See, *e.g.*, *Estate of Aten v. City of Tuscon*, 169 Ariz. 147, 817 P.2d 951 (1991) (reversing summary judgment for City); *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000) (holding City liable to the extent of its insurance); *City of Sacramento v. Superior Court*, 131 Cal. App. 3d 395, 182 Cal. Rptr. 443 (1982) (noting that the evidence tended to show that the officer was not negligent for failing to warn other motorists with his lights and siren but remanding for trial because the plaintiff presented some facts that might warrant a contrary finding); *Tetro v. Stratford*, 189 Conn. 601, 611 n.6, 458 A.2d 5 (1983) (affirming a verdict in favor of the plaintiff and noting that there was "no occasion to consider the extent to which formulation of a duty of care should take into account, as one of the relevant circumstances, the fact that police officers are responding to an emergency"); *City of Pinellas Park v. Brown*, 604 So. 2d 1222 (Fla. 1992) (holding that police, like everyone else, have a duty to lessen the risk or take precautions to protect others when their conduct creates a foreseeable "zone of risk"); *Brooks v. Lundeen*, 49 Ill. App. 3d 1, 364 N.E.2d 423 (1977) (applying an ordinary care standard to officers who set up a roadblock and failed to warn decedent about an approaching highspeed chase); *Eklund v. Trost*, 335 Mont. 112, 151 P.3d 870 (2006) (reversing summary judgment and remanding for trial); *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800 (1981) (affirming the trial court's finding of no liability after a bench trial); *Jones v. Chieffo*, 549 Pa. 46, 700 A.2d 417 (1997) (overruling *Dickens v. Horner*, 531 Pa. 127, 611 A.2d 693 [1992], which held that the officer and his employer were immune under the tort claims act because the accident was caused by the

criminal acts of the fleeing motorist); *Lowrimore v. Dimmitt*, 310 Or. 291, 797 P.2d 1027 (1990) (reversing summary judgment in favor of defendants); *Haynes v. Hamilton County*, 883 S.W.2d at 610 (stating that a decision to operate a car when a reasonable person would not do so can be negligent operation); *Travis v. City of Mesquite*, 830 S.W.2d at 99; *Day v. State of Utah*, 980 P.2d at 1181 (stating that the test is whether the driver of the emergency vehicle acted reasonably and with appropriate care for the safety of others in light of the circumstances); *Mason v. Bitton*, 85 Wash. 2d at 325 (reasoning that the safety of others could be "jeopardized just as much by the negligence of the pursuer as it can by the negligence of the party being pursued").

However, we interpret the language of K.S.A. 8-1506 to require a standard of care higher than mere negligence, obligating plaintiffs to establish more consequential, material, and wanton acts to support a breach of the standard of care. Many other jurisdictions that recognize a duty of care also impose a more restrictive standard of care, usually requiring reckless disregard or willful and wanton conduct. See, *e.g.*, *Estate of Warner v. United States*, 754 F. Supp. 1271 (N.D. Ill. 1990) (applying an Illinois statute that exempts public employees from liability if the act or omission occurred in the execution or enforcement of any law unless the conduct was willful and wanton); *State of West Virginia v. Fidelity & Cas. Co. of N.Y.*, 263 F. Supp. 88 (S.D. W. Va. 1967) (holding that officers had no liability absent a willful reckless disregard for life and property like chasing someone at high speeds through a crowded school zone); *Madison v. Weldon*, 446 So. 2d 21 (Ala. 1984) (reversing judgment in favor of plaintiffs and ordering a new trial because the trial court failed to inform the jury that the officers were entitled to a more liberal standard of care); *Duggan v. District of Columbia*, 884 A.2d 661 (D.C. 2005) (applying a statute requiring gross negligence for an emergency vehicle on an emergency run); *District of Columbia v. Hawkins*, 782 A.2d 293 (D.C. 2001) (holding that the officers' conduct during a police chase met the statutory gross negligence standard); *Cameron v. Lang*, 274 Ga. 122, 549 S.E.2d 341 (2001) (applying a statute similar to K.S.A. 8-1506 which established a reckless disregard for proper law enforcement proce-

dures standard); *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 780, 847 N.E.2d 631 (2006) (affirming jury verdict for defendants because the plaintiff failed to prove the officer's conduct was willful and wanton as required by statute); *Boyer v. State*, 323 Md. at 578-79 (applying a statute that granted immunity to the officer as long as the conduct was without malice or gross negligence); *City of Jackson v. Brister*, 838 So. 2d 274 (Miss. 2003) (applying a statute immunizing officers from liability for any act or omission in the performance or execution of police duties unless the conduct was in reckless disregard of the safety and well-being of any person not involved in the criminal activity); *Tice v. Cramer*, 133 N.J. 347, 627 A.2d 1090 (1993) (applying statutes that immunized public employees and public entities from any liability caused by an escaping or escaped person unless the misconduct is willful); *Mitchell v. State*, 108 A.D.2d 1033, 486 N.Y.S.2d 97 (1985) (affirming the dismissal of plaintiff's claim because the officer's conduct did not rise to the level of reckless disregard); *Saarinen v. Kerr*, 84 N.Y.2d 494, 644 N.E.2d 988, 620 N.Y.S.2d 297 (1994) (concluding that the uncontroverted facts did not demonstrate recklessness and stating that "use of the undemanding ordinary negligence test—or even the more 'flexible' common-law negligence test that is applied in emergency situations—would lead to judicial 'second-guessing' of the many split-second decisions that are made in the field under highly pressured conditions"); *Parish v. Hill*, 350 N.C. 231, 513 S.E.2d 547 (1999) (imposing a gross negligence standard and reasoning that if law enforcement officers are forbidden to pursue, more suspects will flee, creating risks for the general public); *Jones v. Ahlberg*, 489 N.W.2d 576 (N.D. 1992) (applying a gross negligence standard in a case involving injuries to the passenger in the fleeing vehicle); *Whitfield v. Dayton*, 167 Ohio App. 3d 172, 854 N.E.2d 532 (2006) (applying a statute that immunized law enforcement officers operating a vehicle in response to an emergency call unless the operation of the vehicle was willful or wanton); *Seide v. State*, 875 A.2d 1259 (R.I. 2005) (applying a reckless disregard standard but reversing the summary judgment decision in favor of defendants because the evidence could meet the standard); *Clark v. Dept. Of Public Safety*, 353 S.C. 291, 578 S.E.2d 16 (2003)

(noting that the defendant conceded a duty and agreed to a gross negligence standard); *Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991) (concluding that the officer was entitled to sovereign immunity, so the plaintiff had to establish gross negligence to prevail); *Sergent v. City of Charleston*, 209 W. Va. 437, 549 S.E.2d 311 (2001) (requiring bad faith, malicious purpose, or a wanton or reckless manner and concluding that the facts were insufficient to establish that standard).

K.S.A. 8-1506(d) states that the privileges provided by the statute do not "protect the driver from the consequences of reckless disregard for the safety of others." This language establishes "reckless disregard" as the standard of care for evaluating whether the driver of an emergency vehicle breached the duty to "drive with due regard for the safety of all persons." K.S.A. 8-1506(d).

This court has previously interpreted the reckless disregard standard of care in K.S.A. 8-1506 as follows:

"The standards of care charged to the driver of an emergency vehicle and to the driver of an ordinary vehicle are not the same. The privileges and immunities granted to the driver of an emergency vehicle are not available to the driver of an ordinary vehicle. Notwithstanding the grant of immunities, the statutes require the driver of an emergency vehicle to drive with 'due regard for the safety of all persons,' and further provide the immunities do not protect the driver from the consequences of his 'reckless disregard for the safety of others.' Even though the use of the word 'reckless' suggests an element of wantonness, we believe it was the intent of the legislature to charge the driver of an emergency vehicle with due care under the existing facts and circumstances. The facts and circumstances include the privileges and immunities granted by statute. The test of due care (or due regard as used in the statute), as applied to the driver of an emergency vehicle, is whether with the privileges and immunities provided by statute he acted as a reasonably careful driver." *Shawnee Township Fire District v. Morgan*, 221 Kan. 271, 278-79, 559 P.2d 1141 (1977).

We reject the *Morgan* court's definition of reckless disregard as used in K.S.A. 8-1506. Instead, we believe the proper definition for reckless disregard is set forth in the PIK instruction for the crime of reckless driving, which defines reckless as "driving a vehicle under circumstances that show a realization of the imminence of danger to another person or the property of another where there is a conscious and unjustifiable disregard of that danger." PIK

Crim. 3d 70.04. This meaning of reckless is in accord with K.S.A. 21-3201(c), which defines reckless conduct as "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger." This definition is consistent with the long-recognized scale for measuring the severity of conduct required for a breach of a standard of care: Recklessness is a lesser standard of conduct than intentional conduct and requires running a risk substantially greater than the risk which makes the conduct merely negligent or careless. See *Safeco Ins. Co. America v. Burr*, 551 U.S. 47, 167 L. Ed. 2d 1045, 127 S. Ct. 2201 (2007) (citing, *inter alia*, Restatement [Second] of Torts § 500, p. 587 [1963-1964]).

Having established the existence of a duty, and applying the reckless disregard standard of care to the undisputed facts in this case, we conclude that Robbins has failed to establish a prima facie case of breach. When the plaintiff fails to establish a prima facie case of breach, a court may properly grant summary judgment. *Welch v. Via Christi Health Partners, Inc.*, 281 Kan. 732, 768-69, 133 P.3d 122 (2006); *Thornton*, 233 Kan. at 753-54. Evidence sufficient for a prima facie case is that "evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports." *Baker v. City of Garden City*, 240 Kan. 554, 557, 731 P.2d 278 (1987).

In this case, there is not sufficient evidence to support a prima facie finding that the officers had a conscious and unjustifiable disregard of the danger the pursuit caused for other motorists. Here, the officers were confronted with a drunken, violent, ax-wielding, fleeing offender whose very presence put whomever he encountered at serious risk of bodily injury. Clearly, the pursuit of Drechsler was justified and the officers' were operating their vehicles in compliance with the safeguards required by K.S.A. 8-1506. To find otherwise would be implementing the use of judicial hindsight to the many split-second decisions that are made by law enforcement officers under the stress of protecting the lives and safety of the public and themselves. The facts failed to establish

under a reckless disregard standard that the officers in this instance breached any duty owed to the plaintiffs. Accordingly, the district court properly granted summary judgment on behalf of the defendants.

Other jurisdictions have reached similar results when the plaintiff failed to establish that the defendants breached the applicable standard of care. *Warner v. United States*, 754 F. Supp. at 1279 (granting defendants' motion for summary judgment because the facts were insufficient to establish willful and wanton conduct); *District of Columbia v. Walker*, 689 A.2d 40 (D.C. 1997) (concluding as a matter of law that there was no evidence to support gross negligence); *Bailey et al. v. L.W. Edison Foundation*, 152 Ind. App. 460, 469, 284 N.E.2nd 141 (1972) (concluding as a matter of law that the pursuit was reasonable); *City of Miami v. Horne*, 198 So. 2d 10 (Fla. 1967) (affirming summary judgment because the facts failed to demonstrate a lack of due care in the operation of the officer's vehicle); *Broome v. City of Columbia*, 952 So. 2d 1050 (Miss. App. 2007) (affirming bench trial ruling that the City was entitled to sovereign immunity because plaintiff failed to establish reckless disregard); *McCoy v. City of Florence*, 949 So. 2d 69 (Miss. App. 2006) (affirming summary judgment because facts were insufficient to establish reckless disregard); *Lee v. City of Omaha*, 209 Neb. at 804 (affirming trial court's conclusion that the officers were not negligent because that facts were insufficient to establish a breach of the duty of care); *Mitchell v. State*, 108 A.D.2d at 1034 (concluding that failure to operate lights and siren did not rise to the level of reckless disregard); *Saarinen v. Kerr*, 84 N.Y.2d at 503 (affirming summary judgment because the evidence failed to establish that the officer acted with reckless disregard); *Eckard v. Smith*, 166 N.C. App. 312, 320, 603 S.E.2d 134 (2004) (affirming summary judgment for lack of evidence to establish gross negligence); *Sergent v. City of Charleston*, 209 W. Va. 437, 444, 549 S.E.2d 311 (2001) (affirming summary judgment because the officers' conduct was not negligent, wanton, or reckless); *Peak v. Ratliff*, 185 W. Va. 548, 408 S.E.2d 300 (1991) (affirming judgment notwithstanding the verdict on behalf of defendants because the plaintiffs failed to show reckless conduct or gross negligence).

Although we do not adopt the district court's reasoning, we reach the same conclusion. When the district court reaches the correct result, its decision will be upheld even though the district court relied on the wrong ground or assigned erroneous reasons for its decision. *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005).

*Policy Considerations*

Robbins asserts the policy considerations expressed in *Thornton* are outdated and unfounded. Robbins maintains that a police officer's duty to apprehend is distinct and secondary to the officer's duty to protect the public. We need not address Robbins' argument regarding the public policy considerations. Time has not diminished the overriding policy considerations enunciated in *Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655 (1983). Many jurisdictions similarly recognize the public policy expressed in K.S.A. 8-1506 as interpreted by *Thornton* that law enforcement officers' pursuit of fleeing offenders is inherent in the officers' duty to protect the public. In denying a claim for the passengers injured in a vehicle as a result of a high-speed police chase, the Seventh Circuit Court of Appeals eloquently observed:

"Death and disability haunt law enforcement. Lax law enforcement emboldens criminals and leads to more crime. Zealous pursuit of suspects jeopardizes bystanders and persons accompanying the offender. Easy solutions rarely work, and *ex post* assessments—based on sympathy for those the criminal has injured, while disregarding the risks to society at large from new restrictions on how the police work—are unlikely to promote aggregate social welfare." *Mays v. City of East St. Louis, Ill.*, 123 F.3d 999, 1004 (1997).

Suffice it to say, we believe the duty of protecting the public is coextensive with the duty of apprehending suspected criminals and leave to the legislature any policy alteration to the contrary.

The defendants further assert that the district court properly granted their motion for summary judgment based on immunity under the Kansas Tort Claims Act (KTCA). However, we decline to analyze this argument because it is unnecessary for resolving this case.

Affirmed.

DAVIS, J., not participating.

MCANANY, J., assigned.